**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger**

Civil Action No. 12-cv-01656-MSK

**RELLA M. MEDINA,**

      Plaintiff,

v.

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

      Defendant.[1]

**OPINION and ORDER**

**THIS MATTER** comes before the Court on Plaintiff Rella M. Medina's appeal of the Commissioner of Social Security's final decision denying her application for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-33. Having considered the pleadings and the record, the Court

**FINDS** and **CONCLUDES** that:

**I.  Jurisdiction**

Ms. Medina filed a claim for disability insurance benefits pursuant to Title II. She initially asserted that her disability began on July 31, 2001. On advice of counsel, she modified that date to September 4, 2006. After her claims were initially denied, Ms. Medina filed a written request for a hearing before an Administrative Law Judge ("ALJ"). This request was granted and a hearing was held on May 13, 2008.

---

[1] At the time Ms. Medina filed her appeal, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin is substituted as the Defendant in this action to reflect her designation as Acting Commisioner of Social Security, effective February 14, 2013.

After the hearing, the ALJ issued a decision with the following findings: (1) Ms. Medina met the insured status requirements of the Social Security Act through March 31, 2007; (2) she had not engaged in substantial gainful activity since September 4, 2006; (3) she had two severe impairments: lumbar spine degenerative disc disease and disorder of the right shoulder; (4) neither of these impairments, considered individually or together, met or were equivalent to one of the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1 ("the Listings"); (5) Ms. Medina had the Residual Functional Capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b)[2] with the following additional limitations: the option to alternate sitting and standing at will and no overhead lifting with the right upper extremity; (6) Ms. Medina was unable to perform her past relevant work; and (7) Ms. Medina was not disabled because she was able to perform other jobs in the national economy, including companion, cafeteria attendant, and gate guard.

The Appeals Council granted Ms. Medina's request for review of the ALJ's decision, and remanded her case for resolution of five issues. A second hearing was held on September 16, 2010. After this hearing, the ALJ issued a second decision that addressed the five issues set forth by the Appeals Council, incorporating resolution of those issues into the five-step disability analysis. In the second decision, the ALJ made the following findings: (1) Ms. Medina met the insured status requirements of the Social Security Act through March 31, 2007; (2) she had not engaged in substantial gainful activity since September 4, 2006; (3) she had the following severe impairments: degenerative joint disease of the lumbar spine and right shoulder, rotator cuff tear, status post-carpal tunnel release, plantar fasciitis, chronic sinusitis, and obesity; (4) none of these impairments, considered individually or together, met or were equivalent to one of the

---

[2] All references to the Code of Federal Regulations (C.F.R.) are to the 2012 edition. Subsequent citations to 20 C.F.R. Part 404 will include only the specific section, e.g. § 404.1567.

impairments in the Listings; (5) Ms. Medina had the RFC to perform light work with the following additional limitations: she was limited to work that does not require more than occasional bending, stooping, kneeling, crouching, crawling, and occasional overhead lifting with the right upper extremity; (6) Ms. Medina was unable to perform her past relevant work; and (7) Ms. Medina was not disabled because she was able to perform other jobs in the national economy, including furniture rental consultant, cafeteria attendant, and cashier II.

The Appeals Council denied Ms. Medina's request for review of the ALJ's second decision. Consequently, the ALJ's second decision is the Commissioner's final decision for purposes of judicial review. *Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Ms. Medina's appeal was timely brought, and this Court exercises jurisdiction to review the Commissioner of Social Security's final decision pursuant to 42 U.S.C. § 405(g).

## II.     Issue Presented

Ms. Medina raises a single challenge to the Commissioner's decision: the ALJ did not give the appropriate weight to Ms. Medina's treating physician, Dr. Barris. As this issue relates solely to Steps 4 and 5 of the disability evaluation process, the Court does not address Steps 1-3.

## III.    Material Facts

Having reviewed the record in light of the issue raised, the material facts are as follows. Ms. Medina's asserted disability period spanned from September 2006 to March 2007. The bulk of the evidence related to this period, including the important medical opinions in the record, pertain to four impairments: lower back osteoarthritis, chronic plantar fasciitis, carpal tunnel syndrome, and a right shoulder rotator cuff tear. These impairments were variously addressed in treatment notes from Dr. Barris, Ms. Medina's treating physician, as well as other medical professionals.

.

### A. Lower Back Osteoarthritis:

According to the medical record, Ms. Medina first injured her lower back in 2000. MRI and x-ray imaging from 2001 and 2002 indicated chronic disk degeneration at the L5-S1 level and mild stenosis at the L4-L5 level. Ms. Medina underwent surgery in January 2002 to resolve this lower back pain. A November 2005 MRI indicated disk space narrowing, protrusion, and degenerative changes at L3-L4, L4-L5, and L5-S1. A September 2006 MRI indicated mild scoliosis, disk narrowing, and degeneration at the L4-L5 and L5-S1 levels.

Although these MRI's indicate continued problems in her lumbar spine, treatment records from 2006 and 2007 do not consistently indicate that she had lower back pain or functional limits caused by lower back pain. Dr. Barris noted in his treatment records that Ms. Medina did not complain of back pain or functional limits caused by back pain in May, June, and December 2006, as well as February and March 2007. These notes were corroborated by contemporaneous physical examinations that did not reveal back pain. In August 2007, Ms. Medina reported that she had no increase in back pain or tenderness, no new weakness or numbness in her arms or legs, and a normal gait. Dr. Barris noted negative straight leg tests in July and September 2005, and August 2007, and recommended exercise and stretching as treatment in January and September 2006. Other treatment records also do not mention back problems or back pain. During a visit to the emergency room for migraine headache in March 2007, a full physical examination was performed. Although chronic back pain was noted in her history, the physical examination did not indicate any problems or complaints related to Ms. Medina's back, arms, or legs.

### B. Carpal Tunnel Syndrome

Based on an examination from September 2006, Dr. Gibbons concluded that Ms. Medina had negative Tinel and Phalen signs. Tests performed in December 2007, after the relevant disability period, indicate that Ms. Medina had positive Tinel and Phalen signs. These two examinations are the only objective medical evidence in the record related to Ms. Medina's carpal tunnel syndrome. However, several physical examination records from 2006 and 2007 did not indicate that Ms. Medina complained of pain or limitations caused by carpal tunnel syndrome in general or hand pain in particular.

### C. Plantar Fasciitis

Physical examinations from September 2006, August 2007, and April 2008 indicated that Ms. Medina had a normal gait. The September 2006 examination, which was performed by Dr. Gibbons, also indicated that Ms. Medina did not have tender points in her feet. Although Ms. Medina had been prescribed heel inserts and anti-inflammatories for plantar fasciitis, treatment records from the relevant time period do not indicate complaints of pain related to plantar fasciitis, save a single record from February 2007 that notes a history of plantar fasciitis. Dr. Barris recommended increased exercise, including walking, in June 2006.

### D. Rotator Cuff Tear

Ms. Medina's right shoulder rotator cuff tear was well documented in the record. MRI's from December 2006 and February 2007 both indicated full tears of the right rotator cuff, as well as increased joint space fluid and arthritic changes. A December 2006 physical examination performed by Dr. Barris indicated that Ms. Medina had significant pain when she abducted her right shoulder, worsened by external rotation. Dr. Ritter, an orthopedist, examined Ms. Medina in February 2007 and found that she had significant tenderness in her shoulder and was unable to

abduct her shoulder over eighty degrees without pain.  Dr. Pennington also examined Ms. Medina in February 2007 and concluded that her rotator cuff tear caused pain and limited range of motion in her right shoulder.

### E.  Medical Opinions

The record contains two opinions from Dr. Barris entitled Medical Source Statement of Ability to do Work-Related Activities (Physical).  Both outlined limits on Ms. Medina's functional abilities.  Dr. Barris' second opinion, from December 2007, limited Ms. Medina to the following: frequently lifting less than ten pounds; standing and walking less than two hours in an eight hour workday; periodically alternating between sitting and standing; limited pushing and pulling with the upper extremities; never crawling, stooping, or climbing; occasionally balancing, kneeling, and crouching; limited handling, fingering, feeling, and reaching in all directions; and limited exposure to temperature extremes, noise, dust, vibration, humidity, wetness, hazards, and fumes, odors, chemicals, and gases.  As a basis for these opinions, Dr. Barris cited to Ms. Medina's lower back pain, carpal tunnel syndrome, plantar fasciitis, and right shoulder rotator cuff tear.  He also noted that Ms. Medina's rotator cuff tear limited her arm abduction to fifty degrees.

### IV.   Standard of Review

Judicial review of the Commissioner of Social Security's determination that a claimant is not disabled within the meaning of the Social Security Act is limited to determining whether the Commissioner applied the correct legal standard and whether the decision is supported by substantial evidence.  *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  It requires more than a scintilla, but less than a preponderance.  *Lax v. Astrue*, 489

F.3d 1080, 1084 (10th Cir. 2007). On appeal, a reviewing court's job is neither to "reweigh the evidence nor substitute our judgment for that of the agency." *Branum v. Barnhart*, 385 f.3d 1268, 1270, 105 Fed. Appx. 990 (10th Cir 2004) (*quoting Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 800 (10th Cir. 1991)).

A treating physician's opinion is given controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." § 404.1517(c)(2). An ALJ must give specific and legitimate reasons to reject a treating physician's opinion or give it less than controlling weight. *Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001). Even if a treating physician's opinion is not entitled to controlling weight, it is still entitled to deference and must be weighed using the following factors:

> 1) the length of the treatment relationship and the frequency of examination; 2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; 3) the degree to which the physician's opinion is supported by relevant evidence; 4) consistency between the opinion and the record as a whole; 5) whether or not the physician is a specialist in the area upon which an opinion is rendered; 6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Watkins*, 350 F.3d at 1300-01 (citation omitted); § 404.1527. Having considered these factors, an ALJ must give good reasons for the weight assigned to a treating source's opinion. § 404.1517(c)(2). These reasons must be sufficiently specific to make clear to subsequent reviewers the weight the adjudicator gave to the treating source's medical opinions and the reason for that weight. *Watkins*, 350 F.3d at 1301.

### V. Discussion

The sole issue in this case is whether the ALJ gave appropriate weight to Dr. Barris' opinions, in particular his opinion from December 2007. The ALJ found that this opinion was

entitled to limited weight because it was not well supported by the objective medical evidence; it was inconsistent with Ms. Medina's examination results and treatment; and it was inconsistent with Ms. Medina's daily activities. Ms. Medina argues that the ALJ's discussion of Dr. Barris' opinion in the decision was not detailed enough to allow proper review. Additionally, Ms. Medina points to both her own testimony as well as objective medical evidence in the record that supports Dr. Barris' opinion but which the ALJ did not discuss. Finally, Ms. Medina argues that the ALJ's error is not harmless.

As noted above, the ALJ must follow a certain process when analyzing a treating physician's opinion. In this case, the ALJ's analysis adequately followed this process. The ALJ found that Dr. Barris' December 2007 opinion was "not well supported by the objective medical evidence." This finding mirrors the language found in § 404.1517(c)(2). Having found that Dr. Barris' opinion was not well supported by the objective medical evidence, the ALJ then gave several reasons for the weight given Dr. Barris' opinion, including inconsistency with the evidence.

Facially, this is a valid reason for giving limited weight to a treating physician's opinion, per § 404.1527. However, there must be substantial evidence in the record which shows that Dr. Barris' opinion was not well supported by objective medical evidence and was inconsistent with the evidence as a whole the inconsistency. In this case, Dr. Barris' opinion set forth limitations caused by Ms. Medina's lower back osteoarthritis, carpal tunnel syndrome, plantar fasciitis, and right shoulder rotator cuff tear.

### A. Lower Back Osteoarthritis

When assessing Ms. Medina's complaints of back pain, the ALJ noted the following: the recommended treatment was physical therapy and that this therapy provided temporary relief. Notes from a physical examination from April 2008 indicated that Ms. Medina had increased lower back pain, but she exhibited a normal gait and no other negative physical findings, except for fatigue due to pain. Notes from a September 2006 examination indicated that Ms. Medina was limited in her ability to bend forward, but otherwise had full range of motion for her neck, extremities, and trunk.

This evidence forms a substantial basis upon which the ALJ could conclude that Dr. Barris' opinion regarding Ms. Medina's lower back pain were not well supported by objective medical evidence and were inconsistent with the evidence as a whole.

### B. Carpal Tunnel Syndrome

There was conflicting evidence related to carpal tunnel syndrome. A December 2007 examination indicated positive Tinel and Phalen signs, but a September 2006 examination indicated negative Tinel and Phalen signs. Additionally, several physical examinations from the relevant period did not include any mention of carpal tunnel syndrome or hand pain. Although the two test results are in conflict, the ALJ may resolve evidentiary conflicts. *See Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1172 (10th Cir. 2012). As such, the September 2006 examination results constitute substantial evidence that supports the ALJ's finding that this aspect of Dr. Barris' opinion was not well supported by the medical evidence and was inconsistent with the evidence in the record.

### C.  Plantar Fasciitis

The third impairment was Ms. Medina's plantar fasciitis.  The ALJ noted that Ms. Medina had been prescribed heel inserts and anti-inflammatories for her plantar fasciitis, but also noted that multiple physical examinations indicated a normal gait.  Based on the record, examinations from August 2007 and April 2008 indicated that Ms. Medina had a normal gait, as did a September 2006 examination, the only such examination performed during the asserted disability period.  This examination also indicated that Ms. Medina did not have tender points in her feet.  Given this evidence, substantial evidence also supports the ALJ's finding regarding Dr. Barris' opinion about Ms. Medina's plantar fasciitis.

### D.  Rotator Cuff Tear

Unlike the three findings above, the ALJ's finding with regard to Dr. Barris' opinion about Ms. Medina's rotator cuff tear was not supported by substantial evidence.  In December 2007, Dr. Barris opined that Ms. Medina had limited ability to push and pull with her upper extremities due to her right shoulder rotator cuff tear and her inability to abduct her arm greater than fifty degrees.  These functional limits were well supported by objective medical evidence from the asserted disability period.  MRI's from December 2006 and February 2007 revealed a full tear of the right rotator cuff, as well as other shoulder problems.  Three treating doctors, Dr. Barris, Dr. Ritter, and Dr. Pennington, all concluded that Ms. Medina had significant pain and greatly reduced range of motion due to this impairment.  Based on the record, the ALJ's decision to give limited weight to Dr. Barris' opinion regarding the limits imposed by Ms. Medina's rotator cuff injury was not supported by substantial evidence.  As such, reversal and remand is required.

For the forgoing reasons, the Commissioner of Social Security's decision is **REVERSED** and **REMANDED** for a determination at Step 4 and 5 based upon the determined RFC but incorporating Dr. Barris' restrictions due to the tear in Plaintiff's rotator cuff**.**  The Clerk shall enter a Judgment in accordance herewith.

DATED this 5th day of August, 2013

**BY THE COURT:**

Marcia S. Krieger
United States District Judge